In re FORUM HEALTH,
et al., Debtors.

In re Trumbull Memorial Hospital
Foundation, an Ohio non-profit
corporation, Debtor.

In re Western Reserve Health Foundation, an Ohio non-profit corporation, Debtor.

Nos. 09–40795, 09–40809, 09–40800.

United States Bankruptcy Court,
N.D. Ohio.

March 17, 2011.

Jeremy M. Campana, Thompson Hine LLP, Matthew A. Salerno, Melissa Giberson, Paul W. Linehan, Sean D. Malloy, Shawn M. Riley, McDonald Hopkins LLC, Cleveland, OH, Michael A. Gallo, Timothy M. Reardon, Nadler Nadler & Burdman Co., L.P.A., Youngstown, OH, for Debtors.

**MEMORANDUM OPINION REGARDING (i) MOTION OF DEBTOR TRUMBULL MEMORIAL HOSPITAL FOUNDATION TO DISMISS ITS CHAPTER 11 CASE; AND (ii) MOTION OF DEBTOR WESTERN RESERVE HEALTH FOUNDATION TO DISMISS ITS CHAPTER 11 CASE**

KAY WOODS, Bankruptcy Judge.

This cause is before the Court on two motions, each filed on February 4, 2011: (i) Motion of Debtor Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case ("TMHF Motion") (Doc. # 1349) filed by Debtor Trumbull Memorial Hospital Foundation ("TMHF"); and (ii) Motion of Debtor Western Reserve Health Foundation to Dismiss its Chapter 11 Case ("WRHF Motion" and together with the TMHF Motion, the "Motions to Dismiss") (Doc. # 1347) filed by Debtor Western Reserve Health Foundation ("WRHF" and together with TMHF, the "Foundations"). The Foundations seek authority, pursuant to 11 U.S.C. § 1112(b), to dismiss their chapter 11 cases for the stated cause that circumstances have materially changed since the filing of their cases.

On February 25, 2011, the Official Committee of Unsecured Creditors ("Committee")[1] filed Objection of the Official Committee of Unsecured Creditors to (i) Motion of Debtor Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case and (ii) Motion of Debtor Western Reserve Health Foundation to Dismiss its Chapter 11 Case ("Committee Objection") (Doc. # 1383). The Committee Objection contends: (i) the "Debtors" have failed to establish cause to grant the Motions to Dismiss; (ii) the failure of the "Debtors" to use the Foundations' unrestricted funds to pay unsecured creditors violates the Debtors' fiduciary duty and, thus, constitutes "unusual circumstances" warranting denial of the Motions to Dismiss; (iii) substantive consolidation is warranted under the circumstances (despite the Committee's express representation that "[s]ubstantive consolidation is not relevant to the Dismissal Motions," and the Committee's acknowledgment that substantive consolidation "is not properly before the Court" (Comm. Obj. ¶ 53)); and (iv) since the Committee's proposed plan of liquidation can be confirmed within a reasonable time, the Motions to Dismiss must be denied pursuant to 11 U.S.C. § 1112(b)(2).

On March 8, 2011, the Foundations filed Response of Debtors Trumbull Memorial Hospital Foundation and Western Reserve Health Foundation to the Objection of the Official Committee of Unsecured Creditors to (i) Motion of Debtor Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case and (ii) Motion of Debtor Western Reserve Health Foundation to Dismiss its Chapter 11 Case ("Response") (Doc. # 1406). The Foundations argue in their Response that the Court should overrule the Committee Objection for the following reasons: (i) dismissal is appropriate because the Foundations' chapter 11 cases have served their bankruptcy purpose and the Foundations should be permitted to fulfill their charitable purposes; (ii) making the charitable assets of the Foundations available to creditors of all of the Debtors would frustrate both the charitable purposes of the Foundations and the charitable intent of the donors of those assets; and (iii) the Foundations are separate corporate entities whose assets are not available to the creditors of the other Debtors.

Also on March 8, 2011, Mike DeWine, Attorney General of Ohio ("Ohio AG"), filed Position of the Attorney General of Ohio Relative to (i) the Motion of Trumbull

---

1. On March 23, 2009, Daniel M. McDermott, the United States Trustee for Region 9, filed *Appointment of Committee of Unsecured Creditors* (Doc. # 82), which listed the following creditors as Committee members: (i) Service Employees, International Union, District 1199; (ii) Owens & Minor Distributions, Inc. ("Owens & Minor"); (iii) Siemens Medical Solutions USA, Inc.; (iv) Neo–Pet LLC; and (v) Standard Textile Co., Inc. None of the members of the Committee has an allowed unsecured claim against either of the Foundations.

At the Hearing, Mr. Freeman represented that Owens & Minor was an unsecured creditor of both Foundations. This is incorrect. Owens & Minor is listed as a creditor of TMHF on Schedule F, however that claim was stipulated to be an administrative expense claim rather than a general unsecured claim. *Stipulation and Order Allowing Administrative Expense Claims of Owens & Minor Distribution, Inc.* Pursuant to 11 U.S.C. § 503(b)(9) (Doc. # 532) entered on October 23, 2009, provided Owens & Minor with an allowed administrative expense claim against TMHF in the amount of $1,607.06, which is the same amount listed on TMHF's Schedule F. As a consequence, although Owens & Minor has an allowed administrative expense claim against TMHF, which will be paid in full whether or not the TMHF Motion is granted, Owens & Minor does not have an allowed general unsecured claim against either TMHF or WRHF.

Memorial Hospital Foundation to Dismiss its Chapter 11 Case, (ii) the Motion of Western Reserve Health Foundation to Dismiss its Chapter 11 Case, and (3) [sic] the Objection of the Official Committee of Unsecured Creditors to Said Motions to Dismiss ("AG Position") (Doc. # 1397). The AG Position expressly states, "To the extent the Objection of the Official Committee of Unsecured Creditors ... seeks to make those unrestrictive [sic] funds available to pay debts held by Debtors other than TMHF and WRHF, the Objection should be overruled." (AG Pos. at 1.)

The Foundations and the Committee filed, on March 8, 2011, Undisputed and Stipulated Facts for the Hearing on (i) the Motion of Debtor Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case and (ii) the Motion of Debtor Western Reserve Health Foundation to Dismiss its Chapter 11 Case ("Stipulated Facts") (Doc. # 1405), which consisted of 54 paragraphs of stipulated facts, including a stipulation regarding the admissibility of 43 Committee exhibits and 43 exhibits of the Foundations.

At the request of the Foundations (Doc. # 1407), the Court held an evidentiary hearing on the Motions to Dismiss on March 15, 2011 ("Hearing"). Appearing at the Hearing were: (i) Sean D. Malloy, Esq. and Edmund W. Searby, Esq. for the Foundations; (ii) Craig E. Freeman, Esq. for the Committee; and (iii) Patricia D. Lazich, Esq. for the Ohio AG.

For the reasons set forth herein, this Court will (i) grant the TMHF Motion; and (ii) grant the WRHF Motion.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the general order of reference (General Order No. 84) entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I. FACTS

The Court incorporates by reference all of the undisputed and stipulated facts set forth in the Stipulated Facts, but specifically notes the following facts. Eighteen separate voluntary chapter 11 petitions were filed by the Debtors,[2] setting forth

---

**2.** Debtors (1) Forum Health; (2) Forum Health Diagnostics Co.; (3) Forum Health Enterprises Co.; (4) Forum Health Outreach Laboratories, Inc.; (5) Forum Health Ventures Co.; (6) Forum Health Pharmacy Services Co.; (7) Forum Health Rehabilitative Services Co.; (8) Forum Health Services Co.; (9) Western Reserve Care System; (10) WRHF; (11) Dacas Nursing Support Systems, Inc.; (12) Dacas Nursing Systems, Inc.; (13) Beeghly Oaks; (14) PrideCare, Inc.; (15) Trumbull Memorial Hospital; (16) TMHF; (17) Comprehensive Psychiatry Specialists, Inc. and Visiting Nurse Association; and (18) Hospice of Northeast Ohio (collectively, the "Debtors") filed separate voluntary petitions pursuant to chapter 11 of Title 11 of the United States Code on March 16, 2009 (the "Petition Date"). Among the "first day" motions filed by the Debtors was Debtors' Mo-

tion for an Order Pursuant to 11 U.S.C. § 342 and Fed. R. Bankr.P. 1005, 1015(b) and 2002(i) Directing Joint Administration of Cases and (ii) Approving Caption for Jointly Administered Cases ("Motion for Joint Administration") (Doc. # 2). The Debtors represented in the Motion for Joint Administration that they all were "affiliates" within the meaning of Section 101(2) of the Bankruptcy Code and, thus, that joint administration of their chapter 11 cases for procedural purposes only was appropriate. (Mot. for Jt. Admin. ¶ 5.) The Motion for Joint Administration expressly stated that it was not a motion for the substantive consolidation of the Debtors' estates. (*Id.* ¶ 7.)

On March 17, 2009, the Court entered Order Granting Debtors' Motion for an Order Pursuant to 11 U.S.C. § 342 and Fed. R.

each Debtor's separate assets, liabilities and creditors. Although these cases were filed approximately two years ago, there has never been a motion for substantive consolidation or any attempt to pierce the corporate veil of any one of the Debtors.[3]

WRHF, which is a non-profit Ohio corporation, is a charitable foundation qualified under § 501(c)(3) of Title 26 of the United States Code ("IRC"). (Stip. Facts ¶¶ 22–23.) Western Reserve Care System ("WRCS," Case No. 09–40804) is the sole member of WRHF. (*Id.* ¶¶ 27, 30.) TMHF, which is a non-profit Ohio corporation, is a charitable foundation qualified under IRC § 501(c)(3). (*Id.* ¶¶ 37–38.) Trumbull Memorial Hospital ("Trumbull Hospital," Case No. 09–40808) is the sole member of TMHF. (*Id.* ¶¶ 42, 44.) From at least 2005 to the present, WRHF and TMHF each: (i) had its own Board of Directors (*id.* ¶¶ 32, 46); (ii) raised money from donors in the Youngstown and/or Warren communities, which donors gave funds to support each Foundation's charitable purposes (*id.* ¶¶ 33, 47); (iii) granted funds for purposes consistent with IRC § 501(c)(3) (*id.* ¶¶ 34, 48); (iv) utilized a Grants Review Committee to review grant applications and make recommendations to their respective Boards of Directors (*id.* ¶¶ 35, 49); and (v) maintained funds in accounts separate and apart from the funds of Trumbull Hospital or other Forum Health entities (*id.* ¶¶ 36, 52). In addition, TMHF approved grant requests for funds to organizations outside Trumbull Hospital (*id.* ¶ 50) and denied requests for funds for a specific use within Trumbull Hospital (*id.* ¶ 51). TMHF also reimbursed Forum Health for certain expenses incurred by Forum Health on behalf of TMHF. (*Id.* ¶ 53.) These stipulated facts all demonstrate that, notwithstanding the fact that the Debtors may have issued consolidated financial statements, TMHF and WRHF are each distinct legal corporate entities, organized as Ohio not-for-profit corporations for exclusive charitable purposes.

## II. ANALYSIS

TMHF and WRHF each filed a Motion to Dismiss its case. The Motions to Dismiss do not impact the other Debtors' cases; rather, they must be viewed for what they are—motions of two individual debtors to dismiss their respective chapter 11 cases. TMHF and WRHF filed sepa-

Bankr.P. 1005, 1015(b) and 2002(i) Directing Joint Administration of Cases and (ii) Approving Caption for Jointly Administered Cases ("Joint Administration Order") (Doc. # 49). The Joint Administration Order expressly stated, "Nothing contained in this Order shall be deemed or construed as directing or otherwise effecting a substantive consolidation of the above-captioned cases, and shall be without prejudice to the rights of the Debtors to seek entry of an order substantively consolidating their respective cases." (Jt. Admin. Order ¶ 3.)

3. The Committee devotes approximately nine pages (¶¶ 53–73) of its 29–page Objection to the topic, "Substantive consolidation is warranted under the circumstances." Despite the number of pages the Committee dedicates to this issue, the Committee expressly states that substantive consolidation is "not relevant" to the Motions to Dismiss, nor is the subject "properly before the Court." (Comm. Obj. ¶ 53.) At a telephonic status conference on March 1, 2011, the Court asked if the Committee Objection required the Court to address the issue of substantive consolidation at the Hearing. The Committee disavowed that substantive consolidation was necessary for it to prevail on its Objection and specifically stated that the issue of substantive consolidation (i) had been raised only in response to the Foundations' statements in the Motions to Dismiss (*see* TMHF Mot. ¶ 24; WRHF Mot. ¶ 24); (ii) was not properly before the Court; and (iii) would be addressed by the Committee in its proposed plan. As a consequence, the Court stated that substantive consolidation would not be addressed at the Hearing.

rate chapter 11 petitions and each listed its own assets, liabilities and creditors on the schedules thereto. The Foundations' Motions to Dismiss are based on a simple proposition, as follows: (i) prior to the Petition Date, TMHF and WRHF were solvent and able to pay their debts, but they filed chapter 11 petitions because they were jointly and severally obligated on certain bonds described and defined in the Motions to Dismiss as the Bond Obligations; (ii) the Bond Obligations were paid in full from the proceeds of the sale of certain of the Selling Debtors'[4] assets, which were sold pursuant to the Sale Order (Doc. #1072); (iii) because the Bond Obligations have been satisfied, TMHF and WRHF have been relieved of their liability on the Bond Obligations; (iv) the only potential obligation against the Foundations, which could be asserted by the Pension Benefit Guaranty Corporation ("PBGC") based on "control group" liability, has been resolved with the PBGC waiving all claims against the Foundations (pending Court approval); and (v) because the purpose of the Foundations' chapter 11 cases has been fulfilled, there is no longer any reason for their cases to remain pending.

As set forth above, the Committee objects to dismissal of the Foundations' two chapter 11 cases because the "Debtors" have failed to establish cause for dismissal.[5] The Objection is based on the Committee's allegation that the Foundations' unrestricted funds[6] can and should be used to pay the general unsecured creditors of the "Debtors." The Committee argues that the failure of the "Debtors" to use the Foundations' unrestricted funds violates the fiduciary duty of the "Debtors," which constitutes unusual circumstances warranting denial of the Motions to Dismiss. Mr. Freeman made a new argument at the Hearing, which was not included in the Objection, to the effect that the "Debtors" had a fiduciary duty to assert claims for contribution against each of the Foundations as a result of satisfaction of the Bond Obligations from the proceeds of the sale of the "Debtors'" assets. The Committee also contends that because it has proposed a plan that can be confirmed within a short period of time, 11 U.S.C. § 1112(b)(2) requires this Court to deny

---

4. Pursuant to the Asset Purchase Agreement attached as Exhibit A to the motion to sell property free and clear of all liens (Doc. #839), the following Debtors are defined as "Sellers:" (i) Forum Health; (ii) Trumbull Hospital; (iii) WRCS; (iv) Forum Health Services Co.; (v) Forum Health Rehabilitative Services Co.; (vi) Forum Health Enterprises Co.; (vii) Forum Health Ventures Co.; (viii) Forum Health Outreach Laboratories, Inc.; and (ix) Forum Health Diagnostics Co. ("Selling Debtors").

5. The Committee disingenuously states that:

[T]he *Debtors* filed the Dismissal Motions, which would wrongfully deprive the *Debtors'* estates of more than $12 million in unrestricted funds. The *Debtors* have failed to establish the requisite cause to dismiss the *Foundations'* cases. Indeed, since the Dismissal Motions would result in the loss of more than $12 million in unrestricted funds that can and should be used to pay the *Debtors'* creditors, filing the Dismissal Motions is a breach of the *Debtors'* fiduciary duties to maximize value for *their* creditors. (Comm. Obj. ¶1 (emphasis added).) Indeed, the entirety of the Committee Objection reads as if the Debtors are one entity with one body of creditors. This is simply not the case.

6. The Committee acknowledged at the Hearing that the *restricted* funds held by TMHF and WRHF are not at issue. The Committee Objection focuses only on the unrestricted funds held by the Foundations. Based upon *Hunter v. St. Vincent Med. Ctr. (In re Parkview Hosp.)*, 211 B.R. 619 (Bankr.N.D.Ohio 1997) (finding that restricted funds were not property of the debtor's estate), this Court finds that there is no dispute that the restricted funds held by TMHF and WRHF cannot be used to pay creditors.

the Motions to Dismiss. Although the Committee expressly states, "Substantive consolidation is not relevant to the Dismissal Motions, and it is not properly before the Court[,]" the premise of the Committee's arguments is that the assets of TMHF and WRHF can and must be distributed to creditors of the other Debtors. (Comm. Obj. ¶ 53.) As set forth below, the Committee's Objection must fail.

## A. TMHF and WRHF Have Established Cause for Dismissal.

■ The Committee argues that the "Debtors" have failed to establish cause to grant the Motions to Dismiss because such motions do not cite any of the grounds for dismissal outlined in § 1112(b)(4). The Committee argues, "Debtors do not even attempt to set forth facts sufficient to satisfy any of these statutory causes; in fact, they deny that any such causes are present." (*Id.* ¶ 34.) The Committee postulates that the basis for the Motions to Dismiss—*i.e.*, that the chapter 11 process has fulfilled its purpose—is a "novel argument." (*Id.* ¶ 35.) TMHF and WRHF also acknowledge that "the case at bar admittedly is unusual: the Foundations have moved for their own dismissal now that they no longer need bankruptcy protection. In light of the fact that the Foundations intend to pay their own creditors in full, though, dismissal of the Foundations is appropriate." (Resp. ¶ 18.)

There is a dearth of case law on whether the ability to pay creditors outside of bankruptcy constitutes cause for dismissal of a bankruptcy case. The Court, however, does not find the absence of case law on this subject to be unusual because it is a rare chapter 11 debtor that has more than sufficient funds to pay all of its creditors in full. As a consequence, dismissal based on such a successful outcome is uncommon. Moreover, to the extent there are circumstances like the ones currently before the Court in the TMHF and WRHF cases, a debtor's motion to dismiss is not likely to be opposed. Thus, there would be little or no case law on the topic. The novelty of the argument, however, does not mean that TMHF and WRHF have failed to establish cause for dismissal of their cases.

The novelty or unusualness of the Foundations' basis for dismissal is also not the same as the requirement that the Court specifically identify "unusual circumstances . . . that establish that the requested . . . dismissal is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1) (West 2010). Here, despite the fact that the circumstances are unusual, the circumstances do not establish that dismissal is not in the best interests of the creditors of TMHF and WRHF and their estates.

Section 1112(b) states, in pertinent part:

(b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

(2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that—

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

* * *

(4) For purposes of this subsection, the term "cause" includes—

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B) gross mismanagement of the estate;

(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;

(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;

(E) failure to comply with an order of the court;

(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);

(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

(K) failure to pay any fees or charges required under chapter 123 of title 28;

(L) revocation of an order of confirmation under section 1144;

(M) inability to effectuate substantial consummation of a confirmed plan;

(N) material default by the debtor with respect to a confirmed plan;

(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b) (West 2010).

 Nothing in § 1112(b) prohibits a debtor from moving for dismissal of its own case. The statute only requires that the request be made by a "party in interest." The term "party in interest" is not defined in the Bankruptcy Code, but it is axiomatic that a debtor constitutes a party in interest for purposes of moving for dismissal of its own case. Although the list of cause in § 1112(b)(4) includes sixteen examples, such list is non-exhaustive. *See In Re Orbit Petroleum, Inc.*, 395 B.R. 145, 147 (Bankr.D.N.M.2008) (" 'Cause' sufficient for conversion or dismissal is enumerated in a non-exclusive list contained in 11 U.S.C. § 1112(b)(4)[.]") Each of the examples of cause in § 1112(b)(4) is based on some kind of failure by a debtor. In other words, these are examples of cause that a party *other than a debtor* would usually cite as grounds for dismissal.

Thus, the fact that neither TMHF nor WRHF relies on one of the specified examples of cause in § 1112(b)(4) is wholly consistent with a debtor's request for dismissal of its own case.

To the extent a debtor has the resources to pay all of its creditors in full outside the protection of the Bankruptcy Code, continuation of a bankruptcy case does not serve a bankruptcy purpose.[7] *See AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.,)* 360 B.R. 398, 401 (Bankr.D.N.H.2007) ("The list [contained in § 1112(b)(4) ] is not exhaustive, and a case may be dismissed for other causes, such as bad faith *or if the petition does not serve a bankruptcy purpose.*" (emphasis added).) Where, as here, a debtor no longer requires the protection of the Bankruptcy Code and the Bankruptcy Court, such debtor has established cause for dismissing the bankruptcy case.

TMHF and WRHF cite *In re Manawa Implement and Serv., Inc.,* 1988 WL 1571426 (Bankr.S.D.Iowa July 11, 1988), for the proposition that dismissal is appropriate when a debtor has completed a successful reorganization. The Committee attempts to distinguish the applicability of *Manawa Implement* on the basis that no creditor objected to dismissal in that case, in contrast to the Committee Objection in the instant cases. The bankruptcy court in *Manawa Implement,* however, did not base its decision to grant the motion to dismiss on the lack of objection. Indeed, the court stated:

> Even assuming arguendo that an objection to Debtor's motion was filed (which was not), the court would still reach the same result of granting Debtor's motion to dismiss because section 1112(b) grants the Court the power to dismiss "for cause" if in the best interest

of creditors. What constitutes cause is a matter of judicial discretion to be determined on a case by case basis. In the case at bar, cause exists to dismiss because Debtor has made substantial accommodations with all creditors and is now on its way back to financial success. Further, it is in the best interest of creditors to dismiss the case and let Debtor move forward in order to begin paying back its debts. Therefore, Debtor is entitled to have its case dismissed.

*Id.* at *2 (internal citations omitted).

TMHF and WRHF allege, and the undisputed facts bear out, that their circumstances have changed. (Stip. Facts ¶¶ 3, 10.) Each of the Foundations filed for chapter 11 protection because it was jointly and severally liable on the Bond Obligations. (TMHF Mot. ¶¶ 3–4; WRHF Mot. ¶¶ 3–4.) Now that the Bond Obligations have been satisfied, no purpose exists for the continuation of the TMHF and WRHF bankruptcy cases. Dismissal is in the best interests of the creditors of TMHF and WRHF because these two entities have sufficient funds to pay all of their creditors. Emerging from bankruptcy will permit the Foundations to continue to pursue their charitable purposes. As a consequence, this Court finds that TMHF and WRHF have established cause to dismiss their bankruptcy cases.

### 1. Trumbull Hospital, WRCS, and the Other Debtors Do Not Have Rights to the Foundations' Unrestricted Funds.

■ The Committee wholly fails to address whether TMHF and WRHF have stated cause for dismissal in advancing the change in the Foundations' circumstances. Instead, the Committee argues that, be-

7. Dismissal under such circumstances should be contingent on the debtor being required to

pay its creditors from the assets it has on hand.

cause the plan it proposes (which requires that TMHF and WRHF be included) would ostensibly distribute more to general unsecured creditors than the Debtors' (other than the Foundations) proposed plan (which assumes the dismissal of TMHF and WRHF), dismissal of the Foundations would not be in the best interests of creditors. This argument, however, is circular at best.

The Committee fails to appreciate that the Motions to Dismiss were filed by two separate, distinct debtors and implicate only their two cases. The Committee Objection is fundamentally flawed because it is premised upon the assumption that the unrestricted funds held by TMHF and WRHF are available to pay creditors of all of the Debtors. The facts demonstrate that TMHF and WRHF are legal entities separate and distinct from the other Debtors and that the Foundations have always operated as separate non-profit corporations in fulfillment of their exclusive charitable purposes.

The Committee begins with the proposition that "unrestricted funds are property of a debtor's estate." (Comm. Obj. ¶ 44.) The Committee observes, "if a non-profit corporation enters bankruptcy, it may use its unrestricted funds to pay the claims of *its* general unsecured creditors, even if it has ceased operations[,]" citing *Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.,)* 298 B.R. 1, 28–29 (Bankr.D.Mass.2003). (Comm. Obj. ¶ 45 (emphasis added).) As a consequence, the Committee states that the Foundations' more than $12 million of unrestricted funds "can be used to pay unse-

cured creditors." (*Id.* ¶ 46.) What the Committee fails to state, however, is the obvious—that the $12 million of unrestricted funds can be used to pay the *Foundations'* creditors. The Committee Objection goes awry when it argues, "there is no reason why these unrestricted funds could not be used to pay the creditors of Trumbull Hospital and WRCS." (*Id.* ¶ 47.)

There is, of course, a very obvious reason why the unrestricted funds cannot be used to pay the general unsecured creditors of Trumbull Hospital, WRCS, or the other Debtors. The Stipulated Facts underscore the contention of the Foundations that at all times TMHF and WRHF acted in accordance with their charitable purposes in supporting the charitable functions of Trumbull Hospital and WRCS. The Committee offers no evidence to suggest that the unrestricted funds held by TMHF and WRHF were not donated, used and intended to be used exclusively for charitable purposes.

At the Hearing, Mr. Freeman argued that: (i) Trumbull Hospital "effectively controls or has the ability to control" TMHF; and (ii) WRCS "effectively controls or has the ability to control" WRHF. The Committee states, "[I]t is inarguable that the Foundations could give this unrestricted cash to Trumbull Hospital and WRCS. The Foundations simply do not want to do so." [8] (*Id.* ¶ 48.) The Committee's position is that, in making grants to Trumbull Hospital and WRCS, the Foundations were, in essence, paying the creditors of Trumbull Hospital and WRCS. There is no dispute that the Foundations

---

**8.** It is undisputed that neither TMHF nor WRHF "gave" Trumbull Hospital, WRCS or any other entity any unrestricted funds without their respective Grants Review Committees reviewing and approving each grant request. Neither of the Foundations rubber stamped requests for funds. The record

shows that TMHF and WRHF each were cognizant of their fiduciary duties and responsibilities concerning the donor-generated funds that they held. TMHF denied grant requests from Trumbull Hospital and approved grant requests from entities other than Trumbull Hospital. (Stip. Facts ¶¶ 50–51.)

have the power to "give" or grant unrestricted funds to Trumbull Hospital and WRCS in furtherance of the charitable purposes of Trumbull Hospital and WRCS; however, there is no evidence that the converse is true. When pressed by the Court, Mr. Freeman acknowledged, albeit reluctantly, that Trumbull Hospital and WRCS had no ability to "take" the Foundations' funds for their own use, despite the Foundations' ability to "give" Trumbull Hospital and WRCS grants from their unrestricted funds. Since Trumbull Hospital and WRCS had no ability to take the unrestricted funds to pay their creditors, the Committee has no greater rights and cannot require the Foundations' unrestricted assets to be distributed to creditors of the other Debtors as part of its proposed plan. As a consequence, contrary to the Committee's position, this Court finds that there is no basis for the unrestricted funds of TMHF and/or WRHF to be distributed to the creditors of Trumbull Hospital, WRCS and/or the other Debtors.

## 2. The Committee Failed to Demonstrate that the Debtors Have a Fiduciary Duty to Assert Contribution Claims.

■ At the Hearing, the Committee advanced (for the first time) the argument that each of the Debtors has a fiduciary duty to assert claims for contribution against the Obligated Debtors[9]—including the Foundations. The Committee's argument, however, is misleading, confusing and inaccurate. Only nine of the Debtors constitute the Selling Debtors (see n. 4, supra) whose assets were sold pursuant to the Sale Order. These assets were sold

for a single consolidated purchase price without any attempt (before or after sale) to allocate the purchase price to any particular asset or between or among the Selling Debtors. There is nothing in the record that would suggest which of the Debtors were benefitted—or to what extent—by issuance of the Bonds. As a consequence, there is nothing to support the Committee's bald assertion that the "Debtors" each have a fiduciary duty to assert contribution claims against the Foundations as a result of the Bond Obligations being satisfied. As the Committee acknowledges, any purported right to contribution would be based on equity rather than a contractual right. The Committee would have this Court assume that each of the Debtors has a right to contribution from each of the Obligated Debtors in equal shares. There is no basis in the record for the Court to make such an assumption. The Committee's argument about contribution is the same as its unsupported argument that the expenses of the Debtors should be divided equally among the eighteen Debtors. These arguments are based on simple mathematical division, but there is no basis in the record to support equal allocation among the Debtors for expenses, contribution or anything else.[10]

Based on the conduct of the Debtors before, during and after the sale process— including the failure to allocate the purchase price between, among or for the assets sold pursuant to the Sale Order—it appears the Debtors never contemplated making claims for contribution. Significantly, the Committee never raised the issue of the Debtors' alleged fiduciary duty to make contribution claims at any time

9. The Committee uses the term "Obligated Debtors" to refer to those Debtors who were jointly and severally liable under the Bond Obligations.

10. As Mr. Freeman acknowledged at the Hearing, equal allocation is only one possible way to apportion expenses.

during or after the sale process and did not do so until the Hearing on the Motions to Dismiss. Moreover, any claims for contribution that the Selling Debtors might have had are now barred. Subsequent to closing of the sale and payment of the Bond Obligations,[11] the Debtors moved for a bar date for administrative expense claims. On November 15, 2010, the Court entered Order Granting Debtors' Motion to Establish Bar Date for Filing Requests for Payment of Administrative Expense Claims and Approving Form and Notice Thereof ("Administrative Claims Bar Date Order") (Doc. # 1234), which set December 22, 2010, as the bar date for administrative expense claims. Mr. Freeman argued that the Debtors' contribution claims are all administrative expense claims rather than prepetition claims.[12] To the extent any of the Selling Debtors believed they had a claim for contribution from any of the Obligated Debtors—including TMHF and WRHF—arising out of satisfaction of the Bond Obligations, such claims were required to be filed no later than December 22, 2010. Because the Selling Debtors did not assert any such contribution claims, those claims are now barred. Accordingly, this Court finds that the Committee failed to establish that the Debtors have a fiduciary duty to assert contribution claims against the Obligated Debtors.

### 3. The Committee Cannot Avail Itself of the Exception to Dismissal in 11 U.S.C. § 1112(b)(2).

■ Section 1112(b)(1) provides that the court *shall* dismiss a bankruptcy case if the movant establishes cause to do so. Although a bankruptcy court continues to retain discretion to determine if cause for dismissal or conversion[13] has been established, the directive in § 1112(b)(1) is couched in mandatory terms. The Committee attempts, to no avail, to invoke the exception to dismissal set forth in § 1112(b)(2). The Committee's reliance on this subsection is misplaced because, as the party objecting to dismissal, the Committee must establish all three elements in § 1112(b)(2)(A) and (B). After the moving party establishes cause, as this Court has found that TMHF and WRHF have done, in order to defeat dismissal, the objecting party must establish each of the following three elements: (i) the reasonable likelihood that a plan will be confirmed within a reasonable period of time;[14] (ii) the

11. Closing of the sale of the Selling Debtors' assets occurred on or about October 1, 2010. Resolution and payment of the Bond Obligations occurred pursuant to Stipulation and Agreed Order Regarding Payment of Series 2002A Bonds (Doc. # 1275), which was entered on November 30, 2010.

12. Mr. Freeman stated at the Hearing that he did not believe administrative claims had been barred. This is simply not the case. The docket shows that this Court entered two bar date orders—one for pre-petition claims and the second for administrative expense claims.

13. TMHF and WRHF have moved for dismissal of their respective cases, but not the alternative relief of conversion. Since TMHF and WRHF are not-for-profit corporations, these debtors—but no other party—may re-

quest conversion. Section 1112(c) states that a court may not convert a case to a case under chapter 7 if the debtor is "a corporation that is not a moneyed, business, or commercial corporation, unless the debtor requests such conversion." 11 U.S.C. § 1112 (West 2010).

14. Mr. Freeman argued that the Committee was entitled to have a hearing on its disclosure statement and plan prior to the Court's determination of the Motions to Dismiss, presumably so that the Committee could have the opportunity to present its arguments in favor of substantive consolidation. As this Court pointed out at the Hearing, this argument represents a change in the Committee's position. At a telephonic status conference on March 1, 2011, Mr. Freeman specifically acknowledged that the Motions to Dismiss had

grounds for granting dismissal include an act or omission of the debtor (other than in paragraph 4(A)) for which there exists reasonable justification; and (iii) the act or omission will be cured within a reasonable period of time fixed by the court.

Despite the fact that these elements are in the conjunctive, the Committee relies *only* on the first element to argue that dismissal is not warranted. (*See* Comm. Obj. ¶¶ 74–77.) Although the Committee "submits that there is a reasonable likelihood that the Committee Plan will be confirmed within a reasonable time[,]" (*id.* ¶ 75) the Committee totally ignores the other two elements in § 1112(b)(2). Indeed, the Committee gives these other two elements short shrift by baldly stating, "The second and third prongs of the test for denial under section 1112(b)(2) are either inapplicable under the current circumstances or automatically satisfied." [15] (*Id.* ¶ 76.) The Committee states, "Accordingly, there is no act or omission constituting cause to dismiss that can be cured, within a reasonable time or otherwise." (*Id.*) The Committee argues that because the Foundations do not rely on any act or omission set forth in § 1112(b)(4), the Committee can ignore the other two elements of § 1112(b)(2). There is no legal basis for this contention.[16]

To require an objecting party to satisfy all three elements in § 1112(b)(2) would,

according to Mr. Freeman, effectively nullify subsection (A) of § 1112(b)(2). Despite the Committee's position, when a moving party establishes cause that does not constitute an act or omission on the part of a debtor, an objecting party is not free to re-write § 1112(b)(2) to exclude two-thirds of the elements necessary to defeat dismissal. Subsections (A) and (B) are joined by "and," which indicates that an objecting party must establish the elements in both subsections to defeat dismissal once cause has been established. Subsection (A) does not and cannot be read to stand alone as an independent reason not to dismiss a bankruptcy case. The Bankruptcy Code, having been written in the conjunctive, requires a party objecting to dismissal of a bankruptcy case to establish all the elements in § 1112(b)(2) to defeat the directive in § 1112(b)(1) that a court "shall dismiss" such case. As a result, this Court finds that the Committee has failed to establish the exception to dismissal set forth in § 1112(b)(2).

## B. The Exclusive Charitable Purposes of TMHF and WRHF Prohibit Use of Their Unrestricted Funds to Pay Creditors of Other Debtors.

▆ Mr. Freeman stated that he thought it was "unreasonable to believe" that individuals who donated to TMHF

---

to be heard and resolved prior to taking up other pending motions, including the Committee's motion to approve disclosure statement (Doc. # 1341). The only motion the Committee wanted to be heard in conjunction with the Motions to Dismiss was the Committee's Motion for the Appointment of a Chapter 11 Trustee (Doc. # 1376).

**15.** At the Hearing, Mr. Freeman explained that these elements were "automatically satisfied" *because* they were inapplicable.

**16.** Where, as here, a debtor's demonstrated cause for granting dismissal is that continua-

tion of the bankruptcy case would serve no bankruptcy purpose, permitting an objecting party to defeat dismissal merely because such party has proposed a plan that it believes can be confirmed in a reasonable period of time is akin to an involuntary bankruptcy. Indeed, § 303(a) prohibits an involuntary case from being filed against "a corporation that is not a moneyed, business, or commercial corporation," which would prohibit an involuntary case from being filed against either non-profit Foundation. 11 U.S.C. § 303 (West 2010).

and WRHF did not believe that their donated funds would be used for Trumbull Hospital and WRCS. This argument is too broadly stated; this Court believes donors to the Foundations understood that their donations would be used only for the *charitable purposes* of Trumbull Hospital and WRCS, consistent with the Foundations' IRC § 501(c)(3) status. Even the Committee acknowledges that the unrestricted funds of the Foundations were not the same as the general funds of Trumbull Hospital and WRCS.

Indeed, although there is conflicting case law concerning whether the assets of a not-for-profit charitable corporation can be used to pay *its own creditors,* the Committee has cited absolutely no case law that suggests that the unrestricted funds of a nonprofit corporation can be used to pay the creditors of other corporations. *Compare, Hunter v. St. Vincent Med. Ctr. (In re Parkview Hosp.),* 211 B.R. 619, 630 (Bankr.N.D.Ohio 1997) (citations omitted) ("Where property is given to a charitable corporation without restrictions as to the disposition of the property, the corporation is under a duty, enforceable at the suit of the Attorney General, not to divert the property to other purposes but to apply it to one or more of the charitable purposes for which it is organized.") *with, Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.),* 298 B.R. 1, 28 (Bankr.D.Mass.2003) ("The payment of creditors is essential and integral to the carrying on of the charitable mission of the hospital.").

The Committee argues that since the unrestricted funds were donated to the Foundations with the understanding that the funds would benefit Trumbull Hospital and WRCS, the "Foundations unquestionably have the power to distribute the unrestricted funds to Trumbull Hospital and WRCS." (Comm. Obj. ¶ 47.) From this premise, the Committee inexplicitly extends the argument that the "Debtors" have a fiduciary duty to use the unrestricted funds of TMHF and WRHF to pay the "Debtors' " unsecured creditors. This syllogism, however, is based in neither logic nor the law.

There is no evidence that Trumbull Hospital and WRCS, as the sole members of the Foundations, could compel the Foundations to use their unrestricted funds to pay the creditors of Trumbull Hospital and WRCS, let alone the creditors of any other Debtors. Indeed, there is no basis to find that Trumbull Hospital or WRCS could compel either of the Foundations to give them any money. Accordingly, even if, upon proper grant requests, TMHF and WRHF could "give" unrestricted funds to Trumbull Hospital and WRCS, there is absolutely no basis to find that the creditors of either Trumbull Hospital or WRCS had the ability to "take" these unrestricted funds in payment.

TMHF and WRHF are fulfilling their respective fiduciary duties in seeking to pay the creditors of each of their estates. Each of these debtors seeks, through its respective Motion to Dismiss, to make sure that its own creditors are paid and that each of the Foundations can continue to fulfill its charitable purpose. As set forth above, the Committee's argument that the Motions to Dismiss constitute a breach of the "Debtors' " fiduciary duties is not grounded in the facts or the law. Neither the Debtors nor their general unsecured creditors have a right to be paid from the Foundations' unrestricted funds.

■ The Committee purports to know what is best for each of the Debtors, as well as individual creditors, such as the PBGC. Despite having signed a settlement agreement (which has not yet been approved by this Court), in which the PBGC waived all claims against TMHF

and WRHF and agreed not to oppose the Motions to Dismiss, Mr. Freeman insisted at the Hearing that denial of the Motions to Dismiss and confirmation of the Committee's proposed plan would be in the best interests of the PBGC.[17] The Committee argues that its proposed plan, which requires that the cases of TMHF and WRHF not be dismissed, purportedly provides for a greater recovery to the unsecured creditors than the plan proposed by the non-Foundation Debtors. The Foundations point out that the Committee's comparison between the proposed plans is not an "apples to apples" comparison. (See Resp. ¶ 49 n.5.) The Court does not have to make a detailed comparison of the plans because the Committee's basic premise—i.e., that the general unsecured creditors of all of the Debtors are entitled to receive a distribution from the Foundations' estates—is mistaken. A creditor with a claim against one debtor has no right to distribution from the estate of any other debtor. See In re Ben Franklin Retail Stores, Inc., 214 B.R. 852, 857 (Bankr.N.D.Ill.1997).

Even more significant is the Committee's disregard for the Foundations' charitable purposes and their consistent charitable operations. TMHF and WRHF each solicited donations from the Youngstown and/or Warren communities to obtain funds for exclusively charitable, educational and scientific purposes. The purpose of TMHF is to advance the charitable mission of Trumbull Hospital. (Resp. ¶ 24.) The purpose of WRHF is to carry out the charitable mission of WRCS. (Id. ¶ 26.) Taken as a whole, the Stipulated Facts demonstrate that the Foundations did, indeed, fulfill their charitable purposes.

The Committee relies heavily on Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.,) 298 B.R. 1 (Bankr.D.Mass.2003), to support its position that a debtor charitable corporation can pay its general creditors from the debtor's assets. That case is distinguishable from the instant cases in several material respects. First, in Boston Regional, the issue was whether, under Massachusetts law, a non-operating, liquidating charitable corporation was qualified to receive a bequest intended for charitable purposes. That issue is significantly different from the issues currently before this Court—i.e., whether TMHF and WRHF have established cause to dismiss their bankruptcy cases because changed circumstances no longer require bankruptcy oversight. Second, the Boston Regional Court dealt with payment of a charitable hospital's direct creditors, as opposed to the Committee's argument here concerning payment of the creditors of Trumbull Hospital, WRCS and other Debtors from the unrestricted funds of the Foundations. Moreover, the Boston Regional Court held, without any analysis, that "payment of creditors is essential and integral to the carrying on of the charitable mission of the hospital. Indeed, it is the creditors who carry out the charitable work." Id. at 28. There was no indication why or how all types of creditors could be said to advance the charitable work of the hospital. This Court can think of numerous kinds of creditors' claims that would not only fail to advance a charitable purpose, but could be said to thwart such purpose. For example, how do late fees, penalties or charges for defective products advance a charitable purpose? How do expenses for severance pay, tort claims or breach of contract damages advance a charitable purpose? The

17. Mr. Freeman acknowledged that the PBGC was free to waive claims against any of the Debtors. Based on the Court's experience, the Court presumes each party acts in its own self-interest.

*Boston Regional* Court lumped all creditors together without considering whether all such claims rightly advance a charitable purpose. For these reasons, this Court does not find the reasoning in *Boston Regional* to be applicable and/or persuasive.

TMHF and WRHF are limited by Ohio law in what they can do with their unrestricted funds. The Committee ignores the Ohio AG's position that the Foundations' unrestricted funds can only be used to further the charitable purposes of TMHF and WRHF. (AG Pos. at 2–4.) Remarkably, New York counsel for the Committee purports to know more about Ohio law governing charitable contributions than the Ohio AG, whose duty it is to investigate and enforce charitable corporations' compliance with Ohio law. *See* O.R.C. §§ 1716.15 and 1716.16 (Anderson 2009). The Ohio AG asserts that the Committee Objection must be overruled to the extent it seeks to make the Foundations' unrestricted funds available to pay creditors of other Debtors.

Although not directly on point, *Hunter v. St. Vincent Med. Ctr. (In re Parkview Hosp.)*, 211 B.R. 619 (Bankr.N.D.Ohio 1997), is instructive. The *Parkview* court noted:

> Further, it has also been held that, "Where property is given to a charitable corporation without restrictions as to the disposition of the property, the corporation is under a duty, enforceable at the suit of the Attorney General, not to divert the property to other purposes but to apply it to one or more of the charitable purposes for which it is organized." Restatement (Second) of Trusts § 348, cmt. f.

*Id.* at 636. In the instant cases, Ms. Lazich, on behalf of the Ohio AG, stated at the Hearing that the Ohio AG would "step in" to enforce the Foundations' obligations to use their unrestricted funds for only charitable purposes if this Court were to sustain the Committee Objection.

This Court finds no basis to the Committee's arguments that the unrestricted funds of TMHF and WRHF can or should be used to pay creditors of Trumbull Hospital, WRCS and/or other Debtors.

### III. CONCLUSION

For the reasons set forth above, this Court will grant the two Motions to Dismiss. TMHF and WRHF have established, by a preponderance of the evidence, cause pursuant to 11 U.S.C. § 1112(b) for dismissal of their respective cases. The Court finds that no bankruptcy purpose would be served by the continuation of the bankruptcy case of TMHF or WRHF. The Committee failed to establish the requisite elements in 11 U.S.C. § 1112(b)(2) to defeat dismissal of the Foundations' bankruptcy cases since cause has been established. TMHF and WRHF are separate and distinct non-profit corporations, which have operated exclusively for their charitable purposes. The unrestricted funds held by TMHF and WRHF cannot be used to pay the creditors of Trumbull Hospital, WRCS and/or other Debtors.

An appropriate order will follow.

**ORDER GRANTING (i) MOTION OF DEBTOR TRUMBULL MEMORIAL HOSPITAL FOUNDATION TO DISMISS ITS CHAPTER 11 CASE; AND (ii) MOTION OF DEBTOR WESTERN RESERVE HEALTH FOUNDATION TO DISMISS ITS CHAPTER 11 CASE**

This cause is before the Court on two motions, each filed on February 4, 2011: (i) Motion of Debtor Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case ("TMHF Motion") (Doc. # 1349) filed by Debtor Trumbull Memorial Hospital Foundation ("TMHF"); and (ii) Motion of

Debtor Western Reserve Health Foundation to Dismiss its Chapter 11 Case ("WRHF Motion" and together with the TMHF Motion, the "Motions to Dismiss") (Doc. # 1347) filed by Debtor Western Reserve Health Foundation ("WRHF" and together with TMHF, the "Foundations").

On February 25, 2011, the Official Committee of Unsecured Creditors ("Committee") filed Objection of the Official Committee of Unsecured Creditors to (i) Motion of Debtor Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case and (ii) Motion of Debtor Western Reserve Health Foundation to Dismiss its Chapter 11 Case ("Committee Objection") (Doc. # 1383).

On March 8, 2011, the Foundations filed Response of Debtors Trumbull Memorial Hospital Foundation and Western Reserve Health Foundation to the Objection of the Official Committee of Unsecured Creditors to (i) Motion of Debtor Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case and (ii) Motion of Debtor Western Reserve Health Foundation to Dismiss its Chapter 11 Case (Doc. # 1406).

Also on March 8, 2011, Mike DeWine, Attorney General of Ohio ("Ohio AG"), filed Position of the Attorney General of Ohio Relative to (i) the Motion of Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case, (ii) the Motion of Western Reserve Health Foundation to Dismiss its Chapter 11 Case, and (3) [sic] the Objection of the Official Committee of Unsecured Creditors to Said Motions to Dismiss (Doc. # 1397).

The Foundations and the Committee filed, on March 8, 2011, Undisputed and Stipulated Facts for the Hearing on (i) the Motion of Debtor Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case and (ii) the Motion of Debtor Western Reserve Health Foundation to Dismiss its Chapter 11 Case (Doc. # 1405).

At the request of the Foundations (Doc. # 1407), the Court held an evidentiary hearing on the Motions to Dismiss on March 15, 2011 ("Hearing"). Appearing at the Hearing were: (i) Sean D. Malloy, Esq. and Edmund W. Searby, Esq. for the Foundations; (ii) Craig E. Freeman, Esq. for the Committee; and (iii) Patricia D. Lazich, Esq. for the Ohio AG.

For the reasons set forth in this Court's Memorandum Opinion Regarding (i) Motion of Debtor Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case; and (ii) Motion of Debtor Western Reserve Health Foundation to Dismiss its Chapter 11 Case, this Court hereby:

1. Finds that TMHF and WRHF have established, by the preponderance of the evidence, cause pursuant to 11 U.S.C. § 1112(b) for dismissal of their respective cases;

2. Finds that no bankruptcy purpose would be served by the continuation of the bankruptcy case of TMHF or WRHF;

3. Finds that the Committee failed to establish the requisite elements in 11 U.S.C. § 1112(b)(2) to defeat dismissal of the Foundations' bankruptcy cases since cause has been established;

4. Finds that TMHF and WRHF are separate and distinct non-profit corporations, which have operated exclusively for their charitable purposes; and

5. Finds that the unrestricted funds held by TMHF and WRHF cannot be used to pay the creditors of other Debtors.

Accordingly, in order for TMHF and WRHF to be able to: (i) pay their respective creditors; and (ii) continue to fulfill their respective charitable purposes, this Court hereby:

1. Grants the TMHF Motion; and
2. Grants the WRHF Motion.

**IT IS SO ORDERED.**